

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 02 C 1640 | DATE | 7/7/2003 |
| CASE TITLE | Svec vs. Board of Trustees | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
     ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons set forth on the attached order, the defendant's motion for summary judgment (27-1) is granted. Judgment is entered in favor of the defendant.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JUL 0 9 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 39 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| OR | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ANNE SVEC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 02 C 1640 |
| ) | |
| BOARD OF TRUSTEES OF ) | |
| TEAMSTERS LOCAL UNION NO. 727 ) | |
| PENSION FUND ) | |
| ) | |
| Defendants. ) | |

DOCKETED
JUL 0 9 2003

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Anne Svec has filed an action under section 502(a)(1)(B) of ERISA, 29 U.S.C. §§ 1132 (a)(1)(B), against the Board of Trustees of Teamsters Local Union No. 727 Pension Fund ("Pension Fund"). She seeks review of defendant's 1998 decision denying her claim for pension benefits. The Trustees have moved for summary judgment, arguing that its decisions to award benefits under the Union's pension plan are discretionary, and that its decision to deny Svec's claim was reasonable.

### Factual Background

Anne Svec is the widow of Elmer Svec[1], who was a licensed funeral director, embalmer, and chauffeur, and a member of Teamsters Local Union No. 727 from January 7, 1942 until his death in 1987. She alleges that Elmer paid union dues for the duration of his membership in Local No. 727, and that as a member of the Local he was entitled to a pension. Elmer died prior

---

[1] We will refer to Anne Svec as "Svec" and Elmer Svec as "Elmer."

to retirement and never sought to collect pension benefits. In 1998, however, Svec applied to the Pension Fund for survivor benefits as Elmer's widow. The Trustees denied her claim. In a letter to Svec dated May 15, 1998 the Trustees stated the reasons for their decision:

> According to the facts available to me, and upon which I recommended to the Trustees that your application be denied, your husband, Elmer, was not at any time a participant in the Pension Plan nor were contributions ever made to the Fund on his behalf for work performed pursuant to an applicable collective bargaining agreement. In that context, it would be a violation of federal law if the Trustees approved your pension application.
>
> It may be true that your husband became a Union Member in 1942 and maintained his membership until his death in 1987. However, as indicated above, federal law forbids Trustees from giving credit under a Taft Hartley pension plan solely because of union membership. Rather, the law requires that contributions be received by the Fund on behalf of the individual for work pursuant to the terms of a collective bargaining agreement.

Def's Ex. 17, letter from M. Burns (Pension Fund's attorney) to Anne Svec. Svec appealed the decision and on May 27, 1999 received the following reply:

> This is in reference to your appeal of the decision of the Board of Trustees of the Local Union No. 727, I.B.T. Pension Fund ("Fund") denying your request for a survivor's pension. The Trustees considered your August 17, 1998 letter, the records you requested from the Social Security Administration (at the Fund's request), records available to the Pension Fund, as well as records requested from IBT Local Union 727. For the reasons explained below, the Trustees voted to deny your appeal and directed me to advise you of their decision.
>
> Elmer Svec was not a participant in the Pension Plan at any time since the Pension Fund was created in 1964. According to the Pension Fund's records, Elmer Svec was an "owner" in 1964 when the Fund was created. The Funeral Director's Association's records in the Fund's possession show that Elmer Svec is listed as a "partner," along with James J. Svec and James F. Svec, as of October 13, 1948. Because Elmer Svec was not an employee engaged in covered employment, he was never a participant under the Plan. No contributions were made by the Employer on Elmer's behalf and the Trustees concluded that the Employer (James F. Svec & Sons and, later, Svec & Sons Funeral Home) did not remit contributions because it knew that Elmer was a partner/owner. Thus no survivor's pension was payable when your husband passed away in June 1987.

2

Def's Ex.18, letter from J. Burns (Pension Fund's attorney) to Anne Svec (emphasis in original).

On March 6, 2002, Svec filed the present action, alleging that Elmer was a funeral director and an employee–not an owner–of James J. Svec & Sons Funeral Home from 1941 until 1979. Because he did not own the business, Svec alleged, Elmer was in a specifically covered class of employees under Local 727's collective bargaining agreements and entitled to pension benefits.

On May 6, 2002, the Pension Fund moved to dismiss Svec's complaint, arguing that her claim was time-barred under the ten-year statute of limitations that applies to ERISA claims under § 1132(a)(1)(b). In addressing the Fund's motion, the Court acknowledged that the statute of limitation in ERISA cases usually runs from the date that a plaintiff's claim for benefits is denied and that Svec had failed to include in her complaint the dates on which her claim was filed and denied. *See Svec v. Board of Trustees of Teamsters Local Union No. 727 Pension Fund*, No. 02 C 1640, 2002 WL 1559640 (N.D. Ill. July, 16 2002). Because her claim would have been time-barred if the statute ran from the time of Elmer's death in 1987–the only date mentioned in the complaint–the Court granted the motion to dismiss, granting Svec leave to amend. *See Id.* On July 30, 2002, Svec filed an amended complaint stating that the Pension Fund had rejected her application for benefits on May 15, 1998, and denied her appeal on May 27, 1998. The case is now before the Court on the Pension Fund's motion for summary judgment.

## Discussion

The parties agree that Svec's entitlement to pension benefits as her husband's survivor depends upon an interpretation of the version of defendant's pension plan in place at the time of Elmer's death in 1987. Their dispute concerns whether Elmer can be considered an "employee"

3

entitled to benefits under the 1987 plan. Before we address that question, however, we must determine the appropriate standard for reviewing the Pension Fund's decision to deny Svec's claim.

*A.     Standard of Review*

A denial of benefits challenged under § 1132(a)(1)(B) of ERISA must be reviewed *de novo* unless the benefit plan gives the administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan. *Firestone Tire & Rubber v. Bruch*, 489 U.S. 101, 115 (1989); *Perguini-Christen v. Homestead Mortgage Co.*, 287 F.3d 624, 626 (7th Cir. 2002). But a decision to deny benefits under an ERISA plan that grants its administrator discretion is subject to review under the deferential "arbitrary and capricious" standard. *See Exbom v. Central States, Southeast and Southwest Areas Health and Welfare Fund*, 900 F.2d 1138, 1142-43 (7th Cir. 1990). Determination of whether a plan grants its administrator discretion depends on the language of the plan. *Perguini-Christen*, 287 F.3d at 626.

The Pension Fund argues that the language of the 1987 plan grants discretionary authority to its trustees to determine eligibility for pension benefits. It points to section 6.04 of the 1987 plan document which states:

> The Trustees shall, subject to the requirements of the law, be the sole judges of the standard of proof required in any case and the application and interpretation of this Plan, and the decisions of the Trustees shall be final and binding on all parties. Wherever in the Plan the Trustees are given discretionary powers, the Trustees shall exercise such powers in a uniform and non-discriminatory manner.

Def.'s Ex. 16, 1987 Plan Doc., § 6.04, p.28. Relying on *Perguini-Christen*, Svec argues that this language is ambiguous, and that the default rule in favor of *de novo* review ought apply. *See Perguini-Christen*, 287 F.3d at 626 ("'[T]he presumption of plenary review is not rebutted by the

4

plan's stating merely that benefits will be paid only if the plan administrator determines they are due ...' [r]ather, the plan should clearly and unequivocally state that it grants discretionary authority to the administrator ...") (quoting *Herzberger v. Standard Ins. Co.*, 205 F.3d 327, 331 (7th Cir. 2000)). The Seventh Circuit has held, however, that a provision of a pension plan stating that decisions made by the plan's trustees "shall be binding," empowers the trustees of a plan to make discretionary decisions regarding pension benefits. *See Exbom*, 900 F.3d at 1141-42 (provision stating that trustees' decision "shall be binding" vested trustees with highest level of discretion and compelled reviewing court to apply arbitrary and capricious standard). *See generally, Gerlib v. R.R. Donnelly & Sons Co.*, No. 95 C 7401, 2001 WL 1313794, at *7 (N.D. Ill. Oct. 26, 2001)(explaining that *Exbom* is still good law).

The pension plan at issue here states that the trustees' decisions "shall be final and binding" and that the trustees shall be "sole judges" of the standard of proof required to claim an award of benefits. We agree with defendant that the plan clearly empowers it to exercise discretion over decisions to award pension benefits, and that the arbitrary and capricious standard of review therefore applies. Our review, therefore, is limited to the question whether the Trustees' decision to deny Svec's claim was based on a rational connection between the evidence in the case and the language of the plan. *See Exbom*, 900 F.2d at 1143. Though review under this standard is deferential, defendants' decision must be shown to comply with the terms of its plan document, *Cozzie v. Metropolitan Life Insurance Co.*, 140 F.3d 1104, 1108 (7th Cir. 1998), which in this case require defendant to exercise its discretion in a "uniform and non-discriminatory" manner.

*B.     The Pension Fund's Decision*

5

In its May 15, 1998 letter denying Svec's application for survivor benefits, the Pension Fund explained that its decision was based on a determination that Elmer never participated in the Union's pension plan. Pl's 56.1 Resp., ¶ 14. Though Elmer may have been a member of the Union throughout his career as a funeral director, the Fund explained, contributions to the pension plan were never made on his behalf. *Id.* The Pension Fund elaborated on its decision in its May 27, 1999 letter denying Svec's appeal. It stated that Elmer, though a Union member, was an "owner" and not an "employee" at the time the pension plan was created in 1964. It reiterated that it never received contributions earmarked for Elmer and concluded that "the Employer (James F. Svec & Sons and, later, Svec & Sons Funeral Home) did not remit contributions [on Elmer's behalf] because it knew that Elmer was a partner/owner." Pl's 56.1 Stmt., ¶ 16.

Svec does not challenge the Pension Fund's position that in order to receive pension benefits under the 1987 plan, a Union member must qualify as a "covered employee." Indeed, it is clear from the language of the plan that pensions are extended only to "[e]mployee(s) of an [e]mployer for whose employment the [e]mployer is obligated by an [a]greement with the Union to contribute to the Pension Fund." 1987 Plan Doc., §§ 1.07, 1.08, 2.01. Svec insists, however, that the Pension Fund's determination that Elmer was not a "covered employee" was made without adequate evidentiary support. Further, she argues that in the exercise of its discretionary powers, the Fund has adopted inconsistent interpretations of the plan. Though in Elmer's case the Fund has interpreted the plan to exclude funeral home owners from the definition of "covered employees," in other instances, Svec argues, it has sought to force owners to make pension contributions. In addition, Svec emphasizes alleged inconsistencies in the Fund's handling of Elmer's Union status. She points to a $10,000 union death benefit she received at Elmer's death

in 1987 as evidence that the Fund considered Elmer as an eligible participant in the pension plan.

As we have discussed, the pension plan grants the Fund discretion over its decisions to deny pension benefits, and we therefore review its decision to determine whether it was arbitrary and capricious. Under this standard, if we determine that the Fund made an informed judgment based on a reasonable interpretation of the plan and articulated an explanation for its decision that we find satisfactory in light of the relevant facts, then its decision is final. *See Exbom*, 900 F.2d at 1143.

We first address the reasonableness of the Fund's position that owners of a funeral home are excluded from the definition of "employees" under the plan. Svec does not argue directly that the Fund's interpretation of the plan is unreasonable. In fact, she implicitly accepts the notion that funeral home owners are excluded from employee pension eligibility, devoting the lion's share of her argument to an effort to establish that Elmer did not own "Svec & Sons" prior to 1979. In any event, the Fund's interpretation was reasonable and consistent with its prior interpretations of the relevant plan language. As we noted, the plan draws a distinction between employees and employers for purposes of pension eligibility. "Employees" are eligible for participation in the plan. 1987 Plan Doc., § 1.07, § 2.01. "Employers" are not. And covered "employees" are defined in relation to their "employers," who, in turn, are defined by their obligation under a collective bargaining agreement to make contributions to the pension fund on their employees' behalf. *Id.*, § 1.07. Under the terms of the plan, it is reasonable to conclude that those who own their own businesses (or share principal ownership in them) are not "employees of employers" and are therefore ineligible for participation. Moreover, this interpretation is consistent with an earlier version of the Union's pension plan which similarly

7

defined employees as "individuals who are represented for collective bargaining purposes by the Union for employment with any Employer," but stated that "[i]ndividuals who are self-employed or who are co-partners are not represented by the union for collective bargaining purposes in such capacities." Def's Ex. 15, 1963 Plan Document, Amendment 1.

Contrary to Svec's assertions, the Fund has in prior litigation adopted an interpretation of "employee" pension eligibility consistent with the owner exclusion it advances here. She points to a previous dispute litigated between the Pension Fund and her son James Svec, in which the Fund sought to collect pension contributions from James, then the proprietor of the family funeral home. *See Moriarty v. Svec*, 164 F.3d 323 (7th Cir. 1998). In that case, however, the Fund took the same position it has taken here--that principal owners are not covered by the definition of "employees" under the pension plan. *Moriarty*, 164 F.3d at 332. Though it maintained that the funeral home was required to make contributions to the plan accounting for James' employment, the Fund sought only to collect contributions attributable to his employment prior to April 1993, the time after which it claimed that James became a principal owner. *Id.* In short, we find that the Fund's plan interpretation was reasonable and conclude that there is no evidence in the record to suggest that it has applied its interpretive discretion in a non-uniform or discriminatory manner.

The question remains, however, whether the Fund's conclusion that Elmer was a principal owner, and not an employee of the funeral home is supported by the relevant facts. Svec contends that it is not. She relies on Elmer's 1978 and 1979 income tax returns as proof that he did not gain ownership of the funeral home, and therefore remained its employee, prior to 1979. The tax returns show that in 1978, Elmer reported most of his income as employee

compensation and reported no business income, but that in 1979 he reported most of his income as business income and a much smaller amount as employee compensation. Pl's Ex. 1A. She argues that the Fund ignored this evidence of ownership in drawing its conclusion that Elmer had owned the funeral home since 1964 when the Union's pension program was created. Further, she questions the relevance of the evidence that the Fund considered in making its decision, arguing that there are no "objective facts" supporting the conclusion that Elmer owned the funeral home prior to 1979. We do not agree with Svec's assessment. Although the record reflects some evidence to support Svec's account that Elmer gained ownership of the business in 1979, other facts support the Fund's decision. Based on its efforts to investigate Elmer's ownership status, and the evidence in the record, we cannot say that the Fund's decision was irrational or uninformed.

Elmer's 1978 and 1979 tax returns provide some circumstantial evidence that Elmer did not receive business income and did not own the funeral home prior to 1979. And some of the other evidence that the Fund relied upon in making its decision is inconclusive. For example, the Fund emphasizes the Svec family funeral home's membership in the Funeral Director's Services Association (FDSA) and points to FDSA membership records that list Elmer as a partner in James J. Svec & Sons. Def's Ex. 2, Moriarty Affidavit (Ex. C). But those records do not make clear whether Elmer had a partnership interest in the business prior to January 16, 1979, the date on which the funeral home's FDSA membership was apparently transferred to Elmer as the "owner" of Svec & Sons Funeral Home.

Other undisputed facts, however, tend to support the Fund's conclusion that Elmer maintained ownership of the family business before 1979 and at all times relevant to his pension

9

eligibility. The funeral home's financial ledgers show that Elmer and his brother James received higher earnings than the Funeral Home's other employees, Def's Ex. 10, and more importantly, those records also reveal that Elmer earned more than the prevailing weekly wage for funeral directors under collective bargaining agreements in place between 1968-1978. *Id.*; Pl's 56.1 Resp., ¶¶ 64-72. Moreover, Elmer's Social Security Administration earnings statements, beginning in 1964, reveal that his quarterly earnings varied, in contrast to typical salaried funeral directors who are paid uniform wages under the terms of a collective bargaining agreement. Def.'s Ex 20; Pl's 56.1 Resp., ¶ 77. On this basis, the Fund could reasonably infer that Elmer's earnings fluctuated along with the funeral home's profits and that he shared in those profits rather than receiving an employee's salary. More importantly, perhaps, it is undisputed that the funeral home never made contributions to the Pension Fund on Elmer's behalf. Pl's 56.1 Resp., ¶ 16. We agree with the Fund that this supports the conclusion that the funeral home never considered Elmer an "employee" eligible for participation in the Union's pension plan.

Because we conclude that the Fund did not act arbitrarily or capriciously in denying Svec's benefits claim, it is unnecessary to address its alternative argument that her claim is barred by the doctrine of laches. We note, however, that the 11 year period that elapsed between Elmer's death in 1987 and Svec's benefits application in 1998, appears to have contributed to practical difficulties that the Fund experienced in attempting to investigate Svec's claim. In particular, Svec acknowledges that the accounting firm that handled the funeral home's financial records between 1948 and 1978 no longer exists and that the Fund attempted and failed in the course of its investigation to uncover tax documents relevant to the funeral home's ownership. Pl's 56.1 Resp., ¶¶ 118-119. Further, Svec acknowledges that the Fund tried and failed to

10

discover any will for James J. Svec's (Elmer's father's) estate that might have clarified the issue of ownership. *Id.*, ¶¶ 122-123. These investigative efforts bolster the conclusion that the Fund's decision after a thorough and reasonable inquiry, and certainly did not act arbitrarily or capriciously.

Finally, we reject Svec's argument that the $10,000 union death benefit she received in 1987 supports her claim for survivor benefits under the Union's pension plan. There is no evidence in the record to suggest that the death benefit she received was related to Elmer's pension eligibility, or even that it was paid out by the Pension Fund. The fact that she received some form of compensation from the Teamsters Local Union as a result of Elmer's death does not suggest that the Pension Fund's decision, denying her claim under the Union's pension plan, was arbitrary.

## Conclusion

For the reasons stated above, the Defendant's motion for summary judgment [Docket # 27-1] is granted. The Clerk is directed to enter judgment in favor of the defendant.

MATTHEW F. KENNELLY
United States District Judge

Date: July 7, 2003